LET IT BE FILED
[signature] RDMoss
USDJ
3/1/19

RECEIVED
FEB 26 2018
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL S. BENT, pro se

    Plaintiff,

v.

UNNAMED CAPITOL POLICE ONE, et al.,
in official and individual capacity,

    Defendants.

Case No.: 1:18-cv-02636-RDM

SECOND AMENDED COMPLAINT
FOR MONEY DAMAGES

Civil Action

RECUSAL DEMAND

Judge: The Honorable Randolph D. Moss

## INTRODUCTION

1. Comes now the pro se Plaintiff, MICHAEL S. BENT, making the following complaint under the federal Constitution, and do hereby allege, attests, and avers as follows:

### I. PARTIES

### PLAINTIFF

2. Pro se Plaintiff MICHAEL S. BENT (hereafter, "Plaintiff Bent") is a resident of the County of Clark within the State of Washington. Plaintiff Bent brings this action in his own right.

PUBLIC DEFENDANTS

3. Defendants are Capitol Police Officer McCullough, Officer Giovanni, Officer N-8, Officer Brown and Chief of Police Jeffery Smith. All are assigned and authorized under 40 U.S.C. § 6121 et seq., to police the United States Supreme Court building and grounds[1]. Defendant Capitol Police Officers are sued in both their official and individual capacity. Chief of Police Jeffery Smith is sued in his official capacity.

## II. JURISDICTION and VENUE

4. This suit raises federal questions under the United States Constitution, particularly the Fourth and Fifth Amendments, and under federal law including 40 U.S.C. § 6121 et seq.; the Federal Tort Claims Act, 28 U.S.C. § 2674; and as federal action under "*Bivens*" [2].

5. This federal District Court has original jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, given that claims for relief derive from the United States Constitution and the laws of the United States.

6. This Court has authority to award the requested damages relief under 28 U.S.C. § 2674.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because the defendants are officers or employees of the United States acting in their official capacity and the primary acts giving rise to this claim occurred in this district.

---

[1] 40 U.S.C.§ 6121. General
(a) AUTHORITY OF MARSHAL OF THE SUPREME COURT AND SUPREME COURT POLICE— In accordance with regulations prescribed by the Marshal of the Supreme Court and approved by the Chief Justice of the United States, the Marshal and the Supreme Court Police shall have authority— (1) to police the Supreme Court Building and grounds and adjacent streets to protect individuals and property.

[2] "An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. ... [and] "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."" *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 392, 91 S.Ct. 1999 (1971).

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 2 -

## III. FACTUAL ALLEGATIONS

### INTERUPTED DELIVERY OF PLAINTIFF'S PETITION TO THE SUPREME COURT

8. On November 15, 2018, Plaintiff Bent and brother Ronald A. Bent attempted to file two petitions for certiorari with the Supreme Court Clerk. However, while attempting to enter through the north entrance they were redirected by the attendant officer to instead deposit all documents at a booth north of the courthouse on the public walkway. The officer could not cite statutory authority but Plaintiff Bent complied under duress. See Affidavit of Ronald Bent (Docket 1 Attachment 2).

9. Plaintiff Bent and brother proceeded to the booth where Officer McCullough instructed Plaintiff Bent to place all documents related to the first petition into a large plastic bag. Plaintiff Bent complied under duress after requesting permission from Officer McCullough to take the petition documents directly to the Clerk of the Supreme Court. Officer McCullough left with the first petition in the bag.

10. Officer Giovanni appeared from the booth when Plaintiff Bent sought to deliver his second petition. Officer Giovanni instructed Plaintiff Bent to place all documents related to the second petition into another large plastic bag. Plaintiff Bent complied under duress after requesting permission from Officer Giovanni to take the petition directly to the Clerk of the Supreme Court. Officer Giovanni left with the second petition in the bag.

11. On January 9, 2019 at approximately 11:00am, Plaintiff Bent returned with Niyati Jhaveri attempting to file a consolidated petition with the Supreme Court Clerk. However, again while attempting to enter through the north entrance they were interrupted by an attendant officer asking if Bent had authorization (presumably from the only person directing his

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 3 -

policing, the Chief of Police) to present documents directly to the Clerk. See Affidavit of Niyati Jhaveri, Appendix p1a.

12. Lacking such privilege, Bent was redirected by the attendant officer to instead deposit all documents at a booth north of the courthouse on the public walkway. Again, this officer could not cite statutory authority but Plaintiff Bent complied under duress.

13. Plaintiff Bent and Ms. Jhaveri proceeded to the booth where Officer Garris instructed Plaintiff Bent to place a sticker marked with "badge RG/455" on one booklet and then to place all documents related to the petition into a large plastic bag. Plaintiff Bent complied under duress after complaining the documents ought to be taken directly to the Clerk of the Supreme Court.

14. Officer Garris left with the petition documents in the bag. This effected a confiscation, without probable cause shown, of Bent's papers under the direction of the Chief of Police but, perhaps needless to say, "the alternative of resistance, [would be futile[3] and possibly] amount to crime." *Bivens*, 403 U.S. at 395. Bent's documents confiscated by Officer Garris on January 9th sought review of a Ninth Circuit decision concerning 42 U.S.C. §§ 651-669 ("Title IV-D"), and substantial compensation under the Taking Clause from a county municipality.

15. On January 10, 2019, Plaintiff Bent and Ms. Jhaveri again returned to the Court attempting to file another petition with the Supreme Court Clerk. Plaintiff Bent and Ms. Jhaveri proceeded to the booth where Officer Brown instructed Plaintiff Bent to place a sticker

---

[3] "An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Bivens*, 403 U.S. at 392.

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 4 -

marked with "badge TB/468" on one booklet and then to place all documents related to the petition into a large plastic bag. Plaintiff Bent complied under duress.

16. The Chief of Police who directs the Police Officers is the respondent in that second petition, however, under the direction of the Chief of Police, Officer Brown did nonetheless take the petition documents and effected yet another confiscation of Bent's papers without probable cause shown, as done the day prior with the petition concerning Title IV-D.

17. The petition confiscated by Officer Brown sought review of a District of Columbia Circuit decision concerning the confiscatory practices of the Chief of Police and, separately, the absence of direct supervisory authority over the Chief of Police by the Supreme Court Justices. In that case below, Bent sought to impose additional procedural rigor within the Chief of Police operation, but the chief refused to institute even basic procedural safeguards and thereby made his opinion evident. It is thus also reasonable to presume the Chief of Police and his Officers are partial to any petition Bent presents, either in retaliation or for fear of an undesired interdependency with such petition. Nonetheless, it cannot be doubted that he would much prefer to set aside the petition confiscated by Officer Brown.

18. The 18-888 booklets confiscated on January 9, 2019, segregated for review and reviewed February 15, 2019, are reasonably presumed to be substitutes carefully prepared to subvert Bent's petition, if for no other reason, as retaliation for Bent's suit against the Chief of Police.

19. Those reviewed booklets are promptly destroyed and thus the Chief of Police and his Officers are assured that no one will ever detect the alleged substitution. However, here there are unquestionable indicia that the booklets reviewed under 18-888 were not the same booklets confiscated by Officer Garris.

20. Firstly, the booklets segregated for review under 18-888 were mysteriously docketed on the precise day of delivery[4] while the booklets now reserved for review under 18-917 required five days of scrutiny. See Appendix p5a, p7a and footnote 4. There exists no logical reason for difference in screening of the booklets segregated for 18-888 than booklets segregated for 18-917 because they were similarly presented and contemporaneously delivered. However, security screening of booklets segregated for 18-888 was greatly foreshortened or eliminated to permit docketing within mere hours of delivery. This makes evident that the Police Officers trusted the persons who prepared and delivered the booklets segregated for 18-888. Had the booklets segregated for 18-888 review been the booklets Bent delivered, they would have been scrutinized and delayed as were booklets segregated for 18-917. It cannot be presumed that the booklets segregated for 18-888 and now reviewed, were those prepared or delivered by Bent.

21. Secondly, the 18-888 docket makes clear that the Washington State Attorney, not the Solicitor General, asserts authority to waive the right of Steve Wagner, the Acting Secretary of the Administration for Children and Families ("ACF"). Acceptance of the state attorney's waiver makes evident that the ACF Acting Secretary, a truly federal actor, has been substituted by a fictitious state actor of like name. See Appendix p5a and p9a. The subsequent waiver of the Solicitor General[5] makes this yet more evident that there is a recognized federal respondent agency in the original booklets it received and thereby warns that booklets reviewed by the Supreme Court under 18-888 differ substantially from Bent's

---

[4] Docket date is determined as 30 days prior to due date of response and date of filing is the date papers are delivered to police booth officers. Docket for 18-888 only reflects the initial date of delivery of the bifurcated petitions but "Response due February 8" fixes the docketing date of January 9th. See Appendix p5a.

[5] And the prior interlocutory petition 17-337 that stemmed from the same case below.

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 6 -

original booklets served on the Solicitor General. See Appendix p5a. If they were identical as expected, the Supreme Court would have likewise recognized Wagner as a federal Respondent, would have rejected the improper notice from the Washington (State) Office of the Attorney, and would have delayed distribution until receiving waiver of the Solicitor General. See Appendix p5a.

22. Thirdly, the 18-888 docket does not list the county municipality as a Respondent yet such is plainly obvious from even the front cover of Bent's original 18-888 booklet. See and contrast Appendix p5a and p9a. Unquestionably, the petition booklets reviewed under petition 18-888 were clearly not the booklets Bent delivered and did not match the published scanned copy[6] on the Supreme Court docket.

23. As noted, 18-917 involves a controversy in which Bent seeks to burden the operation of the Chief of Police with additional procedural rigor and, based on his clear reluctance, he obviously would much prefer to set aside Bent's petition.

24. Similarly, under Bent's concurrent 18-888 petition, Bent sought review of 42 U.S.C. §§ 651-669 ("Title IV-D"). Under Title IV-D the federal Respondent Steve Wagner, the ACF Acting Secretary, distributes $500M [7] annually in unallocated federal "Incentives". Below, Wagner openly admits Title IV-D (under § 658a) establishes a "regulatory scheme meant to incentivize" courts via "cooperative [financial] arrangements" with all "appropriate courts." However, this financial incentive aberrantly conflicts precedent[8] of the Supreme Court and

---

[6] https://www.supremecourt.gov/search.aspx?filename='docket/docketfiles/html/public/18-888.html
[7] Unallocated federal "Incentive" grants under 42 U.S.C. § 658a(b) - *Amount of incentive payment*
[8] "The concept of public confidence in judicial integrity does not easily reduce to precise definition … But [it is] compelling [and] "the spectacle of … handing over money to judicial[s] … should be avoided if the public is to have faith in the impartiality of its judiciary."" Williams Yulee v. Florida Bar, ___ U.S. ___, 135 S.Ct. 1656, 1667 (2015).

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 7 -

all officers of the court who benefit, directly or indirectly, from Title IV-D were assuredly alarmed by possible review of petition 18-888.

25. It cannot be reasonably doubted that these alarmed court officers and their fellow associates throughout the nations judicial enterprise, including the Chief of Police who boasts membership in the distinguished District of Columbia Bar Association, and all Officers who he directs, cannot under circumstance of Bent's cases, be presume impartial to either petition 18-888 or 18-917.

## IV. ALLEGATIONS OF LAW

26. The published Supreme Court Rules are approved by the Chief Justice of the United States as the official instructions defining the operation of the Court and includes case filing procedures.

27. Supreme Court Rules (1, 12, 13 and 29) lead to the unambiguous conclusion that litigants are to provide case documents to the Supreme Court Clerk who is thereafter accountable to assure case documents are filed and not removed from the Court building. This makes plainly evident the importance of preserving the authenticity of papers via integrity in all Supreme Court operations, to the effective operation of that Court. Precedent militates such action because the Supreme "Court has recognized that … untrammeled functioning of our courts is [imperative]." *Cox v. State of Louisiana*, 379 U.S. 559, 562, 85 S.Ct. 476 (1965).

28. Plaintiff Bent questions the authenticity of what had been presented to the Supreme Court Clerk for docketing in all petitions but most troubling, the booklets reviewed under 18-888. Plaintiff Bent further avers that his state of uncertainty is reasonable under the circumstance. However, given that Bent's state of uncertainty and concern about the authenticity of his litigation documents results from actions of federal officers, their

confiscatory actions do violently infringe Bent's Fourth Amendment right to be secure in his papers and his Fifth Amendment right of due process.

29. By their actions the Police Officers have invalidated Bent's Certification to the Supreme Court. There are no explicit requirements stipulated by law and the Chief of Police has failed to publish explicit requirements that his Police Officers are to preserve documents while in their possession. Considering the Chief of Police and his Officers expected partiality towards Bent's petitions, Bent's booklets were not in assuredly safe hands prior to docketing and the booklets segregated for review were not affirmatively authentic.

30. Bent's original certification of the petition booklets was nullified by the police booth officers who handled Bent's unpackaged booklets for they are not required to assure authenticity of booklets they present to the clerk.[9] Booklets reviewed by the Supreme Court were thus nonconforming and not assuredly equivalent to the original. Bent has verified the online scanned copies but the paper booklets are not accessible for verification.

31. The import of nonconformity cannot be overstated for nonconformity eradicates reasonable perception of the Supreme Court as an impartial tribunal under the pragmatic perspective of that Court as incorporating all operations from receipt of delivery through to case disposition. Given their usurpation of exclusive authority to file briefs in the Supreme Court, precedent imposes the affirmative duty on the Chief of Police and his Officers to "protect the interests of ... litigants before [the Supreme Court] from unseemly efforts to pervert judicial action." *Pennekamp v. Florida,* 328 U.S. 331, 347, 66 S.Ct. 1029 (1946). Failure by the Chief of Police to assure adequate procedural integrity violates Bent's

---

[9] Certification of authenticity, as apparent under Rule 12.7, must be explicit and is not presumed.

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 9 -

statutory right to petition the Supreme Court and his federal constitutional right of access to an impartial tribunal and right to be secure in his papers.

32. Because the Police Officers, like clerks from other courts[10], operate beyond the supervisory constraint of the Supreme Court Justices, it is incumbent on Police Officers to certify the authenticity of all papers presented to the Supreme Court Clerk and moreover, is constitutionally obliged to make that certification to Bent.[11] Lack of a verifiable certificate is, given their partiality to Bent's petitions, presumptive evidence that booklets reviewed by the Supreme Court under 18-888 were inauthentic.

## VI. CLAIMS

## CLAIM ONE

## SUPREME COURT POLICE INTERVENTION VIOLATES PLAINTIFFS' RIGHT TO BE SECURE IN HIS PAPERS AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

33. Each of the preceding paragraphs is incorporated herein.

34. Plaintiff Bent has a federal right to be secure in his papers as guaranteed by the Fourth Amendment. This requires that all processes integrated into the Supreme Court operations, including the confiscatory practice interjected by the Police Officers in the case filing process, affirmatively secure Bent's papers after delivery.

35. Papers such as Bent's Petitions submitted to the Supreme Court must be handled only by authorized personnel who are held accountable to affirmatively preserve documents

---

[10] Including certification of service required under Rule 29.5 and document preparation under Rule 33.1 of this Court which assuredly apply to the version of petition to be reviewed.
[11] A natural consequence of Bent's Fourth Amendment guarantee to be secure in his papers whenever his papers are confiscated by federal officers.

SECOND AMENDED COMPLAINT FOR MONEY DAMAGES
- 10 -

intended for review by the Court. Confiscation without probable cause shown, improperly invalidated Bent's certificates intended for the Supreme Court Clerk and inflicted severe injury to Bent's fundamental right to be secure in his papers. Such action by a federal officer demands strict judicial scrutiny for disposing of this claim.

36. The demonstrated effectiveness of non-confiscatory process in numerous inferior courts, affording litigants the option of direct hand-delivery of documents to court clerks, provides unrefutable evident that confiscation, without probable cause shown, is unnecessary. Accordingly, the coincident infringement of Bent's fundamental right to be secure in his papers, is likewise unnecessary and as such, the confiscatory practice imposed by the Chief of Police and his Officers cannot clear strict judicial scrutiny.

## CLAIM TWO
## SUPREME COURT POLICE INTERVENTION VIOLATES PLAINTIFFS' RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

37. Each of the preceding paragraphs is incorporated herein.

38. Plaintiff Bent has a federal statutory right of meaningful access to petition the Supreme Court that is guaranteed by the Due Process clause of the Fifth Amendment. Meaningful access requires that Plaintiff Bent be assured that his filings, throughout all processes integrated into the Supreme Court operations, including the confiscatory practice interjected by the Chief of Police and his Officers in the case filing process, are affirmatively Bent's filings that communicate his requests, arguments and pleas. Failure by the Chief of Police and his Officers to assure that Bent's uncompromised filings were presented to the Supreme Court Clerk therefore violated Bent's right of access to an affirmatively impartial tribunal.

39. By way of the confiscatory practice of the Chief of Police and his Officers, they have interjected themselves into the adjudicative process of the Supreme Court. As such, their failure to reasonably protect Plaintiff Bent's papers submitted for review, such that papers filed with the Court fail to represent his requests, arguments and pleas, then, for all practical purposes the Chief of Police and his Officers has in fact denied Plaintiff Bent meaningful access to the Court. Such action by a federal officer demands strict judicial scrutiny for disposing of this claim.

40. As noted, most inferior courts afford filers the option to directly hand-deliver documents to their Court Clerks and provide for inspection in view of filers at the point of entry to the Court and thereby assure this practice is workable. Accordingly, the coincident infringement of Bent's fundamental right of access to an affirmatively impartial tribunal, is likewise unnecessary and as such, the confiscatory practice imposed by the Chief of Police and his Officers cannot clear strict judicial scrutiny.

## VII. PRAYER FOR RELIEF

41. WHEREFORE, Plaintiff Bent respectfully prays for a judgment against defendants for compensatory relief including:

A) Damages award of $250,000 – roughly half the expected value of Bent's petitions that have now been compromised by the Chief of Police and his Officers.

B) Bent's reasonable costs and expenses of this action;

C) That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's orders;

Signature executed on 25th day of February 2019.
    /s/ Michael Bent
    Michael S. Bent, pro se
    1115 SE 164 Ave Suite 210-N-8
    Vancouver, WA 98683
    msgbent@gmail.com

## VERIFICATION

Plaintiff MICHAEL S. BENT hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 U.S.C. § 1746, that the above and foregoing representations are true and correct to the best of his knowledge, information, and belief.

Executed at Washington District of Columbia, on 25th day of February 2019.

    /s/ Michael Bent
    Michael S. Bent, pro se